## LOSS BY A GIRL OF PART OF HER SCALP IN REVOLVING SHAFTING.

Court of Appeals for Hamilton County.

THE JOHN HOLLAND GOLD PEN CO. v. JUENGLING.

Decided, March 22, 1913.

*Employee Injured in Shafting—Whether Statute as to Boxing Had Been Properly Complied With is a Question for the Jury—Report of State Inspector of Workshops, Made after the Accident, Not Competent as Evidence—Exhibition to Jury of Injured Part of the Body—Section 1027.*

1. The purpose of the statute providing for the casing or boxing of all shafting is for the protection of operatives, and the "floors" contemplated therein are those upon which the operatives are employed, and whether the shafting is so "cased" or boxed" as to comply with the statute is a question of fact to be submitted to the jury under the evidence and circumstances of a case where injury has occurred to an operative from being caught in shafting alleged to have been exposed or improperly covered.

2. The official report or opinion of a state visitor of workshops and factories as to the safety of the shafting in which the accident occurred, based upon an inspection made after the accident, is not proper evidence in the trial of an action for damages on account of injuries received in such shafting.

3. An operative engaged in burnishing penholders can not be charged with contributory negligence in attempting to recover a holder which had fallen under her bench, where it is in evidence that under the rules of the shop operatives were charged with holders which they lost.

4. The plaintiff in the present case had her hair and a portion of her scalp torn from her head by a revolving shaft.. *Held:* That the exhibition to the jury of the scalp, which had been preserved in alcohol, was not prejudicial to the defendant, where done with the care and in the manner in which the exhibition was made in this case; nor was an award of $5,000 .damages for such an injury excessive.

*Victor Heintz* and *Geoffrey Goldsmith,* for plaintiff in error.
*Thorne Baker* and *L. F. Ratterman,* contra.

JONES (Oliver B.), J.; JONES (E. H.), J., and SWING, J., concur.

Plaintiff below, Clara Juengling, was an operative in the gold pen factory of the defendant. Her duty was to polish pens and penholders, by holding them against "buffs" or polishers which revolved above a table and which were operated from a horizontal revolving shaft below the table in front of which she stood. This shafting was about 25 inches from the floor and about 18 inches back from the front of this work table, which was against the back wall and ran from one side wall to the other and varied from about 26 to 41 inches in width.

In looking for a penholder which had dropped from her hands while polishing it, and which she thought was on the floor under this work table, plaintiff placed her head under the edge of the table. and her hair was caught and wound around this shafting, tearing off a considerable portion of her scalp and resulting in great suffering and serious permanent injuries and personal disfigurement and loss of her hair.

Negligence was charged against the defendant chiefly in that the shafting in front of which she worked was not properly cased and guarded as ordinary care and the laws of Ohio required that it should be. Plaintiff relied upon the terms of Section 10027, General Code:

"The owners and operators of shops and factories shall make suitable provisions to prevent injury to persons who use or come in contact with machinery therein or any part thereof as follows:

"1.  They shall case or box all shafting operating horizontally near floors, or perpendicularly or otherwise between, from and through floors or traversing near floors, or when operating near a passageway or directly over the heads of employees."

Defendant below claims that this statute had been substantially complied with and that it was in effect "boxed or cased;" that the wall in the rear and the top of the work table furnished two sides of "this boxing," and in front, for the greater part of the distance, was a set of five heating pipes, connected with a single steam pipe, for the remainder of the distance, at the place where the accident actually occurred. These five pipes were

placed parallel to each other on a horizontal plane at a level con-
siderably lower than the shaft and further forward. Undoubted-
ly they did in a manner serve to guard this shaft, but the ques-
tion whether they were sufficient to constitute the necessary part
of the boxing or casing to answer the requirements of the statute
may well be doubted, especially when the accident itself shows
they did not protect this shafting from the very danger which
the statute contemplated.

Counsel for defendant below.question the applicability of this
statute to the kind of shafting that here caused the injury and
undertake to draw a fine distinction beweeñ a "structural" floor
and a "traffic" floor. The purpose of the statute was undoubt-
edly for the protection of the operatives, and the "floor"
contemplated by it were those on which the operatives were
engaged in their labors, and it was probably intended to include
shafting sufficiently near the floor to come in contact with opera-
tives upon it. This shafting was undoubtedly so placed as to
come within the terms of the statute. Whether it was such a
shafting and whether it was so "cased" or "boxed" as to
comply with the law were questions of fact which were properly
submitted to the jury under appropriate instructions by the
court.

Nor was it error in the court to exclude the opinion or report
of the witness who was a state official, known as a lady visitor of
workshops and factories, as to the safety of this shafting based
upon an inspection after the accident. *Fowler* v. *Delaplain,* 79
Ohio St., 279; *Laidlaw-Dunn-Gordon Co.* v. *Miller,* 12 C.C.
(N.S.), 246.

It is urged by counsel that plaintiff below was guilty of willful
and gross negligence in placing herself in sufficient proximity to
this shaft to have permitted the occurrence of the injury, be-
cause the opening into which she protruded her head was not
large or easy of access and also especially because of the fact
claimed by defendant that it was not in any way her duty to
look for dropped penholders, but that office was performed
solely by the shop foreman. This was disputed by the plaintiff
below, and the fact that each operative was charged with each

penholder given her to polish, that brooms or broomhandles were provided to help find them on the floor and sweep them out from under the table, and the question of her fellow operative, Mrs. Porter, which immediately led to the accident, whether she had looked for that holder, would seem to support the claim that she was in the performance of her duty.

Another claim of error in the trial below strongly urged by plaintiff in error is that the scalp of plaintiff below, which had been preserved in alcohol, was introduced in evidence and exhibited to the jury against the protest and objection of defendant below and that same was for the sole purpose of exciting the sympathy of the court and jury and constituted misconduct of counsel.

While this kind of evidence may often be used to their advantage by skillful attorneys for the improper purpose of securing undue sympathy for plaintiff in a trial, it frequently may become necessary to exhibit an injured part of the body to best describe the injury, and in a case like this at bar it might be desirable to show the thickness of the scalp removed or the quality and quantity of hair lost by plaintiff. It often becomes a question of good taste in counsel, and where such evidence is improperly sought to be used to excite sympathy for the injured party it might at times have a different result and create a revulsion of feeling to his detriment.

As to the propriety of this kind of evidence, we quote the latter part of Section 1158 of 2 Wigmore on Evidence:

"No doubt the trial court has a discretion, which it shall firmly exercise, to prevent the abuse of such a mode of proof. But it seems too rigorous to forbid a party to prove his case by the clearest evidence; and a jury which through violent prejudice would not be restrained by the court's instructions would probably give way to its prejudice even without this evidence. The courts impose no prohibition, except so far as the discretion of the trial court may prevent abuses."

In *Rost* v. *Brooklyn Heights Rd. Co.*, 10 App. Div. (N. Y.), 477, cited by plaintiff in error, where the court held "that the exhibition of a child's foot which had been amputated and pre-

served in a glass jar, was error which warranted a new trial where it appeared that the direct tendency was to arouse the prejudices and inflame the passions of the jury into an angry resentment against the defendant," in discussing the law on this subject the court say on page 480 of its opinion:

"It is the undoubted rule that the exhibition of an injury or an injured member of the body to the jury is proper where it is the subject of examination, and where such exhibition is necessary to enable the jury to understand the circumstances surrounding the injury, or to obtain a more comprehensive and intelligent conception of the conditions which existed when the injury was received, or of the character of the injury itself. But where such exhibition is not essential or necessary to enable the jury to better understand the conditions under which it was received, or where the jury may be led to illegitimate considerations on account of it, then it may become improper."

Along the same line defendant below objected to the fact that plaintiff below, on one occasion during the trial, sat in the court room for a short period with her hat removed, showing her head denuded in a large part of its hair and scalp. The head had been exhibited to the jury in the course of her testimony. As soon as objection was made by counsel, by direction of the trial judge, plaintiff replaced her hat upon her head, although the weather was warm and she explained that it oppressed her head. This would come within the sound discretion of the court under the law as above stated, and in our opinion was properly treated by the court. And the suggestion by counsel for defendant below, in cross-examination of plaintiff's physician, that the injury to plaintiff's head could be better shown by an X-Ray picture than by an examination of the head itself or of the scalp which had been torn from it, was rejected by the expert physician and does not appeal to the court.

The amount of the verdict, considering the severe character of the injury, seems to show that it was not the result of passion or prejudice on the part of the jury, and counsel for plaintiff in error in their reply brief are candid enough to say if they were really liable the verdict should have been greater, but argue that

because they deny all liability any verdict is an evidence of improper sympathy.

It is also urged that the court erred in practically giving a double charge against the defendant. The record shows that all of the eight special charges requested by defendant were given by the court without objection and the same ground was again covered by the court in its general charges, so if there could be any complaint against the court in the matter of a so-called double charge it should hardly come from the defendant below.

Other errors were pointed out, but a careful consideration of the record and the able arguments of counsel lead us to the conclusion that there is no error in the record sufficient to warrant a reversal, and the judgment below is affirmed.

Judgment affirmed.