## HARMLESS IRREGULARITIES IN A FIRST DEGREE MURDER TRIAL.

Court of Appeals for Muskingum County.

CHARLES LYNCH v. STATE OF OHIO.

Decided, May Term, 1915.

*Summoning a Grand Juror Under the Wrong Initials—Not Ground for a Plea in Abatement—Description of the Instrument With Which the Crime Was Committed—Testimony of Undivorced Woman Living With Defendant as His Wife May be Received Against Him.*

1. The summoning of a grand juror under the wrong initials is a misnomer only, and is not an irregularity of which advantage may be taken by a plea in abatement.

2. Under the present rules for pleading in criminal cases, which require reasonable certainty only in an indictment, the fact that the pleader might have been a little more explicit in his statement as to why the instrument alleged to have been used in committing the homicide could not be more fully described, does not constitute ground for quashing the indictment.

3. Where the woman with whom the defendant was living as his wife at the time of the commission of the crime, is shown to have been previously married to another man who was still living and from whom she had not been divorced, it is competent for the state to call her as a witness against the defendant.

*E. F. O'Neal* and *E. R. Myer*, for plaintiff in error.
*C. F. Ribble* and *Perry Smith*, contra.

SHIELDS, J.; POWELL, J., and HOUCK, J., concur.

At the September (1914) term of the Court of Common Pleas of Muskingum County, Ohio, the grand jury of said county returned an indictment against Charles Lynch, the plaintiff in error, charging him in four separate counts with murder in the first degree—in killing John G. Albert. Upon trial had the plaintiff in error was convicted of the crime charged and upon a recommendation of mercy by the jury in its verdict, he was

sentenced to the penitentiary for life. For the purpose of having the judgment and proceedings in the court below reviewed upon proceedings in error, a petition in error was filed in this court containing numerous assignments of error, and while not waiving any rights under the various errors assigned therein, the errors discussed and urged upon the attention of this court were: (1) that the court below erred in overruling and dismissing the plea in abatement of the plaintiff in error to said indictment; (2) that said court erred in overruling the motion of the plaintiff in error to quash the first and second counts in said indictment; 3) that said court erred in overruling the demurrer of the plaintiff in error to the first and second counts in said indictment; (4) that said court erred in admitting evidence upon the trial to the prejudice of the plaintiff in error; (5) that said court erred in its charge to the jury; (6) that the verdict of the jury was manifestly against the weight of the evidence and not sustained by sufficient evidence and was contrary to law.

1. Taking up the errors alleged in their order, it was contended on behalf of the plaintiff in error that the grand jury presenting said indictment was not legally constituted: (1) That one J. F. Bell participated in the deliberations of said grand jury as a member thereof when he was not selected or drawn as a grand juror in the manner prescribed by law; (2) that said grand jury was impaneled and sworn before the date set out in said indictment as the date of the commission of the crime charged, and that therefore defendant did not have an opportunity of making any challenge to the array or to any one in said grand jury.

In reply to the plea in abatement setting up this alleged irregularity, after making general denial of the claim thus made by the plaintiff in error, the state by its counsel averred therein:

"That the said J. F. Bell as mentioned and referred to in defendant's plea in abatement is and was the same person considered by the jury commissioners of this county at the time they selected names of the jurors for the present year as that indicated and designated by the said commissioners as F. M. Bell

of Fourth Ward B., the said jury commissioners then believing that said person's name to be F. M. Bell instead of J. F. Bell; that the said name F. M. Bell, Fourth Ward B., with others, were by said commissioners selected, written on separate pieces of paper uniform in size, quality and color, placed in the jury wheel and certified to as jurors for the ensuing year.

"That upon the order of this court of common pleas, the clerk in the presence of the sheriff, judge and jury commissioners, after turning the jury wheel several times, drew therefrom the number of names of the persons to serve as grand jurors specified in said order, among which names was 'F. M. Bell, Fourth Ward B,' That the clerk forthwith issued to the sheriff a venire facias commanding him to summon the persons whose names were so drawn as aforesaid to attend as grand jurors at the time and place in the order stated.

"That thereupon, on the 15th day of September, 1914, the said sheriff in endeavoring to serve said summons drawn in the name of F. M. Bell as aforesaid, left a true copy thereof at the usual place of residence of the said J. F. Bell, to-wit, at No. 229 Jackson St., Fourth Ward B., Zanesville, Ohio; that the said J. F. Bell appeared in answer to said summons at the time and place named in said order and said summons and answered to the name of F. M. Bell; was impaneled, sworn and charged as a grand juror in and under the name of F. M. Bell, and as such served on said grand jury and took part in all the deliberations and consideration of said grand jury, all of which appears of record in the journal of this court, a copy of which record is hereto attached, marked Exhibit A, and made a part hereof.

"That the said J. F. Bell who so served on said grand jury as aforesaid was at said time possessed of the requisite qualifications to act as a juror, and was not selected and drawn as a member of said grand jury in any manner other than as herein set forth.

"That at the time the names of the jurors were selected by the said jury commissioners as aforesaid, and at the time of the service of said summons by said sheriff as aforesaid, there was no other F. M. Bell or J. F. Bell living in said Fourth Ward B."

Upon a demurrer being filed to the foregoing reply, the court below overruled the same and dismissed said plea in abatement. Under the facts stated, was the action of said court erroneous? The statutes point out the manner in which the drawing, sum-

moning and impaneling of grand jurors shall be conducted. Section 11435 of the General Code provides that:

"A challenge to the array may be made and the whole array set aside by the court when the jury, grand or petit, was not selected, drawn or summoned, or when the officer who executed the venire did not proceed as prescribed by law. But no challenge to the array shall be made or the whole array set aside by the court, by reason of the misnomer of a juror or jurors; but on challenge, a juror or jurors may be set aside by reason of a misnomer in his or their names; but such challenge shall only be made before the jury is impaneled and sworn, and no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualifications to act as jurors."

Here it appears that J. F. Bell was supposed and believed to be the same Bell whose name was selected by the jury commissioners, and whose name was afterwards drawn from the jury wheel to serve as one of the grand jurors, as appears more fully in the reply to said plea in abatement. Taken all in all, in our judgment, it was a misnomer at best, and the qualifications of J. F. Bell as a grand juror not having been raised or challenged, but who it is not claimed did not have the requisite qualifications to act as such grand juror, said alleged irregularity under the provisions of said Section 11436, General Code, was not such an one, in our judgment, as that the plaintiff in error could avail himself of and thereby defeat the state in its right to further prosecute.

Again, aside from the fact that said plea in abatement seems to rest upon conclusions rather than upon facts stated, can irregularities and defects in the selecting, drawing and impaneling of a grand jury be taken advantage of by a plea in abatement?

In the case of *Huling* v. *State*, 17 O. S., 583, it is held that—

"It is a good plea in abatement in a criminal case, that one or more of the grand jurors who found the indictment had not the legal qualifications of such grand jurors.

"But mere irregularities in selecting and drawing grand jurors, which do not relate to or affect their personal qualifica-

tions as such, must be taken advantage of, if at all, by challenge
for cause, and can not be so pleaded in abatement.''

The principle laid down in the foregoing case has since been
cited and followed in a number of cases decided by the Supreme
Court of this state, among which are the following: 81 O. S.,
504-5; 70 O. S., 373; 45 O. S., 649.

And in the case of *Lindsey* v. *State*, 4 C.C.(N.S.), 409, affirmed
in 69 O. S., 201, which was a case in this district, the court in its
opinion held that—

''The errors complained of as to impaneling the grand jury
are irregularities only, and not objections to any of the panel as
to their qualifications.  Sections 5162 and 5167, Revised Statutes,
provide for the selection, drawing and summoning of grand
and petit juries.  Mere irregularities in selecting and drawing
grand juries, which do not relate to or affect their qualifications
as such, must be taken advantage of, if at all, by challenge for
cause, and can not be made grounds to quash the indictment
or be pleaded in abatement.

''Technical defects in obtaining and impaneling a grand jury
which do not affect the competency of the persons to act, can
not properly be made the basis of a motion to quash the indict-
ment or plea in abatement, but must by express statutory provi-
sion be availed of, if at all, by challenge before the jury is im-
paneled and sworn.''

And in the case of *McHugh* v. *State*, 42 O. S., 154, in which
the array was challenged for misnomer of a grand juror, it was
held:

''It not appearing that the officer had acted in bad faith, or
that the accused had been injured by the mistake in any of his
substantial rights, the error, if any was committed, afforded no
ground of reversal.''

And the judge announcing the opinion in said case on page
164 said:

''An indictment can not be held invalid for a defect or im-
perfection which does not tend to the prejudice of the substantial
rights of the defendant on the merits.''

Can it be said that the plaintiff in error was injured or prejudiced in any of his substantial rights by J. F. Bell acting as a grand juror when his qualifications to act as such were not questioned, especially when we consider that the manner of selecting and drawing juries concerns the public rather than the accused? We do not think so, and we further think that the action of the court below was fully justified in dismissing said plea in abatement and that such action affords no ground of reversible error.

2. The second error complained of is that the court below erred in overruling the motion of the plaintiff in error to quash the first and second grounds of said indictment (said motion to quash the third and fourth counts in said indictment having been sustained). It was contended on behalf of the plaintiff in error that said indictment is indefinite in this, that it does not sufficiently describe the nature and character of the instrument alleged to have been used by the plaintiff in error in causing the death of the said John G. Albert, thereby failing to apprise the plaintiff in error of the charge he was called upon to meet and defend against. That one charged with crime is entitled to be advised of the nature of such crime is fundamental, but that there are cases in which the state for want of information can not aver with certainty the character of the weapon or instrument used in the commission of a crime is also well known, and in such case the rules of criminal pleading permit the pleader to describe such weapon or instrument as "with a certain weapon, the name and character of which is to the grand jurors unknown," or "with a certain instrument, the name and character of which is to the grand jurors unknown." In the indictment before us perhaps the pleader might have been a little more explicit in stating why the weapon or instrument alleged to have been so used could not have been more fully described, but under the present liberal rules of criminal pleading, reasonable certainty in an indictment only being required, we are of the opinion that said indictment sufficiently describes the crime of murder in the first degree and of the manner in which said crime was committed.

Defects and imperfections which do not prejudice the substantial rights of the accused on the merits do not invalidate the indictment, and we do not think that the substantial rights of the plaintiff in error were prejudiced by any lack of averment in said indictment advising him more fully of the charge made against him.

Entertaining these views we are of the opinion that the court below was right and did not err in overruling said motion to quash said counts in said indictment.

3. It was also contended that the court below erred in overruling the demurrer of the plaintiff in error to the first and second counts in said indictment. From what has already been said in this opinion it is scarcely necessary to add here that in our judgment the action of said court in overruling said demurrer was proper.

4. It was urged that the court below erred in admitting certain evidence of one Mrs. Frank Brown, as the same appears in the bill of exceptions, commencing on page 245, given upon the trial in behalf of the state against the objection of the plaintiff in error, and to which exceptions were duly taken. It was claimed by the plaintiff in error that the witness was his wife and she was therefore incompetent to testify as a witness against him, while the state denied that the witness was his wife, and even under the assumption that she was, still under the present statute (O. L. Vol. 100, pp. 49-50) fixing the rights of husband and wife to testify, she was competent to testify as a witness as to the whereabouts of the plaintiff in error on a particular occasion, under favor of the special exception made in said statute. That husband and wife are competent witnesses in behalf of each other in a criminal case, and incompetent witnesses against each other, except in certain instances, is fully recognized in this state, the last announcement made by the Supreme Court, perhaps, being in the case of *State* v. *Orth*, 79 O. S., 130.

This is true as between husband and wife. Here an anomalous situation was presented—the plaintiff in error claiming that he was lawfully married to said witness and that she was at the

time of the trial his wife, while she claimed that they were never married and that she was not and is not his wife. Without here reciting the testimony offered on this subject, it is sufficient to say that it is not altogether clear that some form of marriage may have been undertaken by these parties at Newark in 1909, but it is admitted by the plaintiff in error that at the time he ran away with said witness in 1906, she was then living in Union City, Indiana, that she was then a married woman and was then the wife of Frank A. Brown of said city, with whom the plaintiff in error admitted having worked, and was well acquainted with. That he afterward never learned, nor made any effort to ascertain, whether or not the said Brown and his wife were divorced, except what said witness told him about a month before their alleged marriage. In addition to the testimony of said witness denying that she was married to the plaintiff in error and that she was not divorced from her husband, Frank A. Brown, the said Brown also testified that they were married, that they were still man and wife and were not divorced. From the foregoing it appears that the said witness had a lawful husband living from whom she had not been divorced, at the time she was called on as a witness to testify, and if this is true, the alleged marriage between the plaintiff in error and the witness was not a valid marriage. Underhill on Evidence lays down the rule that:

"The burden of proving that the marriage relation exists between the witness and the accused rests upon the party opposing the competency of the witness, unless a marriage valid or at least apparently valid in all respects is shown to exist at the time the witness is offered, or his or her testimony must be received. It is not enough that the parties, supposing the marriage to be valid, had lived together for years as man and wife and had introduced each other to the world as such. The marriage must be actually and in fact valid, and must have existed in full force and vigor down to the date of the crime alleged.

"The validity of the marriage will be inquired into upon a *voir dire* examination of the witness and if the relation of husband and wife is not found to exist, the witness is competent and must be permitted to testify."

Again, in the case of *State* v. *Rocher,* 106 N. W. Rep., 648, it is held:

"There is, of course, a presumption in favor of legality arising from naked proof that a marriage has taken place, but it is a mere presumption of the fact and may be overcome by proof, among other things, that one or both of the parties was incompetent to enter into the marriage relation. Accordingly the presumption must give way at once in the face of proof that the defendant had a former wife living, undivorced, and his incompetency to enter into the subsequent marriage is thus established."

Following the above authorities, under the proof made that the witness was then the wife of another from whom she had not been divorced, and who was then living, the alleged marriage of the plaintiff in error and the witness could not be and was not a valid marriage, and the witness was therefore competent to testify, and in permitting her to testify, in our opinion, the court below did not commit error.

It was also urged that the court below erred in admitting as evidence upon the trial the certificates issued by the State Security Bank of Zanesville to the said John G. Albert. These certificates are dated January 17, 1914, February 14, 1914, and June 20, 1914, issued by said bank to the said John G. Albert and made payable to him, and were delivered to him as of said dates. In the absence of proof to the contrary, the presumption would be that he retained the possession and was the owner of said certificates until the date of his death. True, the possession of them traced to and found in the possession of the plaintiff in error soon after the crime charged was committed, would not of itself be evidence sufficient to convict him of such crime, but it would be a circumstance for the jury to consider in connection with all the other evidence in the case, including the explanation given, if given, of such possession, and whether satisfactory or not. It was argued by the plaintiff in error that possession of these certificates may have been lawfully secured from the said John G. Albert in his lifetime by some other person, and that

their possession by the plaintiff in error was therefore not necessarily unlawful, nor was such possession to be regarded as having any connection with the crime charged. As stated, the possession of these certificates as a fact or circumstance standing alone might not be an incriminating circumstance or evidence of guilt, but the conduct and declarations of the plaintiff in error in explaining their possession might be, all of which it was the province of the jury to determine. The rights of the plaintiff in error in this respect seem to have been properly guarded and protected in the instructions of the court to the jury in its charge. We find no error upon the part of the trial court in admitting these certificates as evidence upon the trial, nor in the admission of the evidence in relation thereto.

5. One of the specifications of error in said petition in error is that the court below erred in its instructions to the jury. We have carefully examined this charge and find it to be a fair and able exposition of the law applicable to the case. In it the interests of the state and the rights of the accused are alike properly cared for.

In the charge given as well as in the refusal of the court to give certain requests of the plaintiff in error submitted to be given in charge, we think there was no error.

6. It was argued that the verdict in this case was clearly against the weight of the evidence and not supported by sufficient evidence, and was contrary to law. At the expense of no little time and labor we have carefully read the entire bill of exceptions. This we were led to do because of the important character of the case—important to both the state and the accused. Without stopping to philosophize on the value of human life or the stern demands of the law that one accused of crime shall first be given a fair trial before liberty or life is taken, in the light of this record we can not say that the plaintiff in error has not had the full benefit of this charitable and humane rule of the law. Despite his claim that he was not in the vicinity of the Albert premises on the Sunday evening in question, a reading of the record shows the decided weight of the evidence given upon the

trial to be to the contrary. His own admissions show that he was well acquainted with said Albert and was familiar with his premises. It likewise shows that during his visits at the Smithley and Quinn homes in the afternoon of that day his mind seemed to be occupied with matters concerning said Albert, and that in the evening of that day his conduct was observed to be both strange and unnatural. This evidence when considered in connection with the undisputed fact that he left his home in Zanesville for Wheeling that night (the night of the murder) without any apparent cause, and in connection with the evidence clearly showing that after reaching Wheeling or Bellaire he soon surrounded himself with ex-convict friends and laid plans with their aid to negotiate and raise money on one of the said certificates of deposit in question, and after having been taken in custody by the authorities, he stealthily sought to conceal his pocket-book containing the other two said certificates of deposit, and then denied having possession of any and all of them. these together with other facts and incriminating circumstances clearly shown, were before the jury and in their solution of them we do not think their verdict was against the weight of such evidence or contrary to law.

Finding no error in the record prejudicial to the plaintiff in error the judgment of the court of common pleas will be affirmed and the case is remanded for execution.