**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1677
_____

ATCHA ADJANKARA,
                                                Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                                Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A058-015-545)
Immigration Judge: Honorable Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 5, 2018

Before: McKEE, AMBRO, and RESTREPO, *Circuit Judges*

(Opinion filed: November 28, 2018)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

McKEE, *Circuit Judge*

Atcha Adjankara petitions for review of an order of the Board of Immigration Appeals, which dismissed his appeal from an Immigration Judge's decision finding him removable for knowingly assisting the illegal entry of another person[1] and ineligible for a fraud waiver.[2] We will vacate the decision and remand the matter to the BIA, to allow the BIA an opportunity to further consider its order and to provide additional explanation of its final decision after the additional consideration.[3]

Adjankara, a native and citizen of Togo, desiring to immigrate to the United States, entered what is widely known as the diversity lottery. The spouse and children of persons granted an immigrant visa may accompany them to the United States. Prior to completing his visa application, Adjankara married Fatia Morou. At the time, he believed that she had two daughters, Assana and Foussena Amadou. On Adjankara's immigrant visa application, he listed Fatia Morou as his wife, and Assana and Foussena Amadou as their daughters.[4] After he was issued a DV-1 immigrant visa, Adjankara and Morou traveled together to the United States. The two children did not travel with them.[5] Before

---

[1] 8 U.S.C. § 1227(a)(1)(E)(i).

[2] *Id.* § 1227(a)(1)(H).

[3] The BIA had jurisdiction pursuant to 8 C.F.R. § 1003.1. We have jurisdiction under 8 U.S.C. § 1252. Our standard of review of the BIA's legal conclusions is *de novo. Escobar v. Gonzales*, 417 F.3d 363, 365 (3d Cir. 2005). Because the BIA adopted the findings of the IJ and made additional findings, we will review the decisions of both the BIA and the IJ. *Escobar v. Gonzales*, 417 F.3d 363, 365 (3d Cir. 2005) (citing *Wang v. Ashcroft*, 368 F. 3d 347, 349 (3d Cir. 2004)).

[4] App. 19.

[5] App. 24.

Adjankara's flight left Ghana, Morou told Adjankara that the two children were not her daughters and that they had already flown to the United States.

Three years later, the Department of Homeland Security began investigating a human trafficking ring. Young African women were smuggled into the United States and forced to work without pay in hair braiding salons. Assana and Foussena Amadou were identified as victims of that trafficking network. Subsequently, DHS charged Adjankara with deportability for knowingly assisting Assana and Foussena Amadou illegal entrance into the United States.

Under 8 U.S.C. 1227(a)(1)(E)(i), an undocumented immigrant "who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable." The IJ concluded that Adjankara knew the children were not his step-children before he entered into the United States.[6] Based upon that conclusion, the IJ found that Adjankara knowingly assisted the children's illegal entry into the Unites States.

We cannot readily determine from this record how the IJ and BIA concluded that Adjankara knowingly assisted the illegal entry of Assana and Foussena Amadou, both of whom were the unwitting victims of human trafficking. Neither the IJ nor the BIA has explained this. Further, neither the IJ nor the BIA specified if the children's illegal entry was before or after Adjankara learned that they were not Morou's daughters. Based on

---

[6] App. 35.

the record, it appears that he acquired that knowledge after the children's entry. If the BIA and IJ believe that after-acquired knowledge is sufficient to satisfy the mens rea requirement of 8 U.S.C. § 1227(a)(1)(E)(i), neither has explained that conclusion.

Therefore, we will vacate the decision and remand the matter to the BIA, to allow the BIA an opportunity to further consider its order and to provide additional explanation of its final decision after the additional consideration.