**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-1705
_____

Jorge Luis Valarezo-Tirado,
                                             Petitioner

v.

Attorney General of the United States of America

_____

On Petition for Review of a Final Order of
the Immigration Court
(Agency No. A208-449-401)
Immigration Judge:  Pallavi S. Shirole

_____

Argued on March 10, 2021

Before: SMITH, *Chief Judge*, McKEE and AMBRO, *Circuit Judges*

(Opinion filed: July 15, 2021)

Charles W. Stotter, Esquire
Carlton Fields, P.A.
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932

Robert D. Helfand, Esquire          (**Argued**)

Office of the Connecticut State Comptroller
Retirement Services Division
165 Capitol Avenue
Hartford, CT 06103
*Counsel for Petitioner*

Jeffrey Bossert Clark, Esquire
Anthony C. Payne, Esquire
Lance J. Lolley, Esquire          (**Argued**)
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
*Counsel for Respondent*

––––––––––––

OPINION OF THE COURT

––––––––––––

McKEE, *Circuit Judge*

Jorge Luis Valarezo-Tirado petitions this Court for review of an Immigration Judge's reinstatement of his prior order of removal. The IJ affirmed a Department of Homeland Security (DHS) asylum officer's determination that Valarezo-Tirado did not have a reasonable fear of torture as required for relief under the Convention Against Torture (CAT) or a reasonable fear of persecution as required for asylum and withholding of removal. Valarezo-Tirado appeals the IJ's denial of his CAT claim. For the reasons that follow, we will grant the petition for review and vacate the IJ's decision and order and remand for further proceedings.

**I.**

**A.    Factual Background and Procedural History**

Jorge Luis Valarezo-Tirado, an Ecuadorian citizen, entered the United States illegally in 2017. He was subsequently detained by DHS, and in January 2020, DHS

reinstated a prior order of his removal.[1] However, before he was actually removed, DHS conducted a reasonable fear interview in front of an asylum officer because Valarezo-Tirado claimed a fear of persecution if he were returned to Ecuador. That interview began on February 20, 2020. At the start of the interview, Valarezo-Tirado was twice informed of his right to postpone the interview for up to 48 hours to procure an attorney.[2] He was also provided with a list of pro bono and low-cost attorneys who may be willing to represent him. However, both times he was asked, he declined, and decided to proceed with the interview that day without an attorney.[3]

Valarezo-Tirado told the asylum officer that in 2016 he had a dispute with a neighbor, Enrique Villa, in his hometown of Pedro Vicente Maldonado, Ecuador. Valarezo-Tirado sold Villa a load of lumber. When Valarezo-Tirado went to collect payment, Villa refused to pay.[4] Valarezo-Tirado then went to the local police to file a report about Villa's refusal, but the police allegedly told Valarezo-Tirado not to file a police report. According to Valarezo-Tirado, "they told me not to do anything, that he will pay me; that I should leave it alon[e] [and] that he will pay me."[5] Officers also told Valarezo-Tirado that Villa was "involved in some dark business."[6] Villa was allegedly known in the community to have ties to drug trafficking.[7]

---

[1] DHS had previously detained Valarezo-Tirado and issued a Form I-860 Determination of Inadmissibility and Order of Removal on September 6, 2015. **(App. 33.)** DHS removed Valarezo-Tirado to Ecuador on October 23, 2015. **(App. 32.)** The events giving rise to this appeal occurred after Valarezo-Tirado's removal in 2015.

[2] **(App. 21, 22.)**

[3] **(App. 21, 22.)**

[4] **(App. 26) ("I expressed myself very strongly asking him to pay me. In addition, I threatened him that if he did not pay me in good terms; I was going to go to the police.")**

[5] App. 26.

[6] *Id*.

[7] **(*Id*. at 23) ("I had a problem with a person that is linked to drug trafficking. . . . Enrique Villa, I know him by this name. He has a nickname called De Cali because he is Colombian.")**

Valarezo-Tirado told the asylum officer that based on the inaction of the local police, he believed Villa "ha[d] some kind of friendship with the police and the police would have told [Villa] that I came to file a report against him."[8] Accordingly, Valarezo-Tirado did not file a police report. However, as Valarezo-Tirado later told the IJ, he returned to Villa's house to demand his money a second time. Rather than paying Valarezo-Tirado, Villa threatened him with a pistol: "he told me to leave things alone or something will happen to my family or me."[9]

Fearing for his and his family's safety, Valarezo-Tirado fled to the United States with his family. Valarezo-Tirado told the asylum officer that since he fled his hometown, he "heard [Villa] was in jail one time, that he had [a] problem with the police."[10] Valarezo-Tirado clarified that he believed that the state or provincial police had detained Villa.[11] He told the asylum interviewer that the state and provincial police were separate forces than the local police who previously discouraged him from filing a police report.[12]

The DHS asylum officer found that Valarezo-Tirado was "credible," meaning that his testimony was "consistent, detailed, and plausible,"[13] but that he did not establish a reasonable fear of persecution or torture if removed to Ecuador.[14] As to past torture, the asylum officer concluded "[t]he limited harm experienced by the applicant (verbal threats of unspecified harm) does not rise to the level of severe physical or mental pain required to constitute torture."[15] And "[t]he incident did not cause the applicant any physical harm and there is no indication that the applicant experienced any prolonged mental suffering from the experience."[16]

---

[8] *Id*. at 26.
[9] *Id*. at 24.
[10] *Id*. at 25.
[11] **(*Id*. at 26.)**
[12] **(*Id*. at 26) ("[T]he police in my town can be friends with him but not the state or provincial police.")**
[13] *Id*. at 29.
[14] **(*Id*. at 20, 29–31.)**
[15] *Id*. at 31.
[16] *Id*.

4

As to the threat of future torture, the asylum officer found that Valarezo-Tirado "failed to provide specific and persuasive facts that a public official such as a corrupt police officer would specifically intend to inflict on him severe harm."[17] The officer also concluded that Valarezo-Tirado "failed to provide specific and persuasive evidence to establish a reasonable possibility that a public official would consent or acquiesce to his future harm by Mr. Villa."[18]

Valarezo-Tirado appealed the DHS asylum officer's negative credible fear determination to an IJ. At the beginning of the hearing before the IJ, the IJ had the following exchange with Valarezo-Tirado about his right to counsel:

> **IJ**: You do have the right to be represented in this hearing by an attorney but at no expense to the Government. You previously received a packet that listed your rights in these proceeding[s]. You also received a list of attorneys and organizations that might be willing to represent you at little or no cost. Do you remember getting that list?
>
> **Valarezo-Tirado**: Yes.
>
> **IJ**: Okay. You don't have an attorney here with you today but because these are expedited proceedings, I can't give you any more time to find an attorney. All right. Sir, have you understood everything that I've explained to you today?
>
> **Valarezo-Tirado**: Yes.[19]

The IJ then summarized Valarezo-Tirado's prior testimony from the credible fear interview and allowed him to expand on why he felt he could not report Villa to the police. Valarezo-Tirado stated that he was afraid that Villa had friends in the police department, and therefore did not file a police

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at 6–7.

report.[20] The IJ concluded that she understood that Valarezo-Tirado was afraid to return, "but the problem is that in order . . . for you to be able to seek relief in this country you have to fear persecution on account of a protected ground."[21] She found "[t]he situation that you are facing seems to be more of a personal matter. Because of that, sir, I do not find that you've established a reasonable possibility that you would be persecuted on account of one of these protected grounds."[22] The IJ also stated that she "concur[red] in [DHS'] reasonable fear determination."[23] Her written opinion stated, *in its entirety*: "R not targeted on account of protected ground. Government is willing to assist."[24]

Valarezo-Tirado now petitions for review.[25]

## II.

Valarezo-Tirado raises the following three arguments on appeal: (i) the IJ's conclusion that he did not have a reasonable fear of torture was not supported by reasonable,

---

[20] (**App. 9**) (**"I think that he either . . . had friends in the police department or that the police work with him because when I went to report him, they, the police tell me, don't, don't do it, just wait for him to pay you because he has own shady businesses."**)

[21] *Id*. at 11.

[22] *Id*.

[23] *Id*.

[24] *Id*. at 1.

[25] Because Valarezo-Tirado was subject to a reinstated order of removal, DHS had exclusive jurisdiction to consider Valarezo-Tirado's reasonable fear claim under 8 C.F.R. § 208.31(a) in the first instance. The IJ had jurisdiction to review DHS' negative reasonable fear determination under 8 C.F.R. §§ 208.31(a), (g). Where an "IJ concurs with the asylum officer's decision that the applicant did not establish a reasonable fear of persecution or torture, . . . '[n]o appeal shall lie from the [IJ]'s decision.'" *Bonilla v. Sessions*, 891 F.3d 87, 90 n.4 (3d Cir. 2018) (quoting 8 C.F.R. § 208.31(g)(1)). An IJ's decision concurring with an asylum officer's negative credible fear determination is, therefore, a final order of removal. *Id*. We have jurisdiction to review final orders of removal under 8 U.S.C. § 1252. *See also id*.

6

substantial, and probative evidence on the record as a whole; (ii) the IJ violated his due process rights by failing to "develop his testimony" as to his fear of torture if returned; and (iii) the IJ violated his right to counsel.

A.

In order to obtain relief under the CAT, Valarezo-Tirado must show "that it is more likely than not that he would be tortured upon return to his country"[26] and that the torture would occur "by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity."[27] "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."[28] It is the IJ's responsibility in the first instance to decide if Valarezo-Tirado has demonstrated eligibility for CAT relief.[29] We review an IJ's findings of fact under an "'extraordinarily deferential standard' [and] we uphold the IJ's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"[30]

Given the IJ's less-than-terse explanation of her denial of CAT relief, it becomes necessary to again stress that "the availability of judicial review . . . necessarily contemplates *something* for us to review."[31] This means that an IJ (or the BIA) must explain a decision "with such clarity as to be

---

[26] *Saravia v. Att'y Gen.*, 905 F.3d 729, 735 (3d Cir. 2018) (internal citation omitted).

[27] 8 C.F.R. § 1208.18(a)(1).

[28] *Id.* § 1208.18(a)(7).

[29] 8 U.S.C. § 1231(b)(3)(C) (The trier of fact, the IJ, "shall determine whether the [noncitizen] has sustained the [noncitizen's] burden of proof.").

[30] *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011)).

[31] *Abdulai v. Ashcroft*, 239 F.3d 542, 555 (3d Cir. 2001).

understandable."[32] And "[a]lthough we ask, in evaluating whether an agency determination is supported by substantial evidence, 'whether a reasonable fact finder could make such a determination based upon the administrative record,' *we will not supply the basis for its decision where appropriate reasons are not set forth by the [IJ] itself*."[33] Given the bullet point-like checklist that purported to explain the IJ's decision here, we stress that, "[w]here the administrative decision fails to consider or mention evidence that is on its face relevant and persuasive, the proper course is to remand for further consideration by the IJ."[34]

Valarezo-Tirado alleges that the IJ's conclusion that he does not have a reasonable fear of torture if returned to Ecuador is not supported by substantial evidence. We agree. The entirety of the IJ's written decision rejecting his claim states: "R not targeted on account of protected ground. Government is willing to assist."[35] With nothing more than that bare conclusion—"[g]overnment is willing to assist"—we have no way of determining what evidence, if any, the IJ relied upon. "An IJ must support her factual determinations with 'specific, cogent' reasons such that her conclusions 'flow in a reasoned way from the evidence of record.'"[36] Failure to provide such support "does not pass muster under the substantial evidence rubric."[37]

Valarezo-Tirado argues not only that there is no evidence in the record to support the IJ's conclusion; he claims that the record evidence supports the opposite conclusion. He believes this record supports the conclusion that the police were unwilling or unable to assist. He points to his testimony before the asylum officer and before the IJ. He testified that the police told him not to file an official police report because Villa

---

[32] *Wang v. Att'y Gen.*, 423 F.3d 260, 270 (3d Cir. 2005) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 241 (1947)).
[33] *Id*. at 271 (citing *Chenery Corp.*, 332 U.S. at 249) (emphasis added).
[34] *Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir. 2007).
[35] App. 1.
[36] *Toure v. Att'y Gen.*, 443 F.3d 310, 316 (3d Cir. 2006) (citing *Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir. 2003)).
[37] *Id*. (citing *Dia*, 353 F.3d at 254).

was into "some dark business."[38] He told the IJ: "when I went to report [Villa], they, the police [told] me, don't, don't do it."[39] The government, on the other hand, points to Valarezo-Tirado's testimony before the asylum officer in which he stated that, at one point after Valarezo-Tirado fled his hometown, he heard that the provincial police had detained Villa.[40]

Therein lies the problem. The IJ's failure to provide a citation or reference to anything in the record leaves us guessing at the evidence she relied upon and gives us "[nothing] to review."[41] "[W]e cannot give meaningful review to a decision in which [an IJ] does not explain how it came to its conclusion."[42] Valarezo-Tirado is correct when he argues that although the government "suggests ways in which [Valarezo-Tirado's] testimony *might* have supported [the IJ's] conclusion,"[43] the government can only guess whether the IJ even considered the evidence of Villa's alleged arrest by provincial police. We fare no better. It "would be improper for us to speculate as to whether" the IJ considered such evidence, or how it factored into her conclusion.[44] The basis for the IJ's decision "can and should be addressed explicitly by the [IJ] upon remand."[45]

We have previously granted a petition for review in which the alleged basis for the BIA's denial of relief was that "the evidence is insufficient" and "the arguments made by the [government] on appeal . . . are persua[sive]" because we could not "perform meaningful review of [such an] order."[46] Here, we have even less to work with.

We realize, of course, that the IJ and BIA have a tremendous caseload and very crowded dockets. We have taken pains to note that the large number of cases on IJs' and

---

[38] App. 9.

[39] *Id*.

[40] **(*See* Resp't's Br. at 11.)**

[41] *Abdulai*, 239 F.3d at 555.

[42] *Awolesi v. Ashcroft*, 341 F.3d 227, 229 (3d Cir. 2003).

[43] Pet'r's Reply Br. at 15–16.

[44] *Voci v. Gonzales*, 409 F.3d 607, 617 (3d Cir. 2005).

[45] *Id.*

[46] *Awolesi*, 341 F.3d at 229.

the BIA's dockets "impose[] practical limitations on the length of the [IJ's and] BIA's written opinions."[47] However, we will not permit crowded dockets or a backlog of cases to excuse an IJ or the BIA from providing a meaningful explanation of why someone has been denied relief under the asylum laws or the CAT. The most fundamental notion of due process must include an opportunity for meaningful judicial review. We reiterate that "judicial review necessarily requires something to review and, if the agency provides only its result without an explanation of the underlying fact finding and analysis, a court is unable to provide judicial review."[48] The required review is simply not possible when we are provided with nothing more than the kind of one-line checklist that is relied upon here. We cannot allow an IJ or the BIA to dispense with an adequate explanation of a final decision merely to facilitate or accommodate administrative expediency.

Since "the [IJ]'s failure of explanation makes it impossible for us to review its rationale, we [will] grant [Valarezo-Tirado's] petition for review, vacate the [IJ's] order, and remand the matter to [the IJ] for further proceedings consistent with this opinion."[49]

B.

Valarezo-Tirado also argues that the IJ had a duty to develop his testimony about government acquiescence to torture because that troubled the IJ and was dispositive in her denial of his claim.[50] He supports this argument by citing to our line of cases requiring IJs to provide notice to a noncitizen before denying his or her claim for a lack of corroboration. In *Toure*, for example, we stated that the IJ "has a duty to develop [the noncitizen's] testimony, especially regarding an issue that she may find dispositive, and . . . must adequately explain the reasons for [her] decisions."[51] The IJ must also "give the [noncitizen] notice of what corroboration will be expected and an opportunity to present an explanation if the [noncitizen]

---

[47] *Voci*, 409 F.3d at 613 n.3.
[48] *Dia*, 353 F.3d at 268 (Stapleton, J., dissenting) (citing *Chenery Corp.*, 332 U.S. at 196–97).
[49] *Abdulai*, 239 F.3d at 555.
[50] **(Pet'r's Br. at 11.)**
[51] 443 F.3d at 325 (internal citation omitted).

10

cannot produce such corroboration."[52] This "rule derives principally from the fact that we cannot have meaningful judicial review without giving the applicant notice and an opportunity to corroborate."[53]

As we have already discussed, however, the IJ did not adequately explain the reasons for her decision. Consequently, we cannot determine if the IJ erroneously relied on a lack of corroborating evidence. On remand, therefore, to the extent that the IJ concludes Valarezo-Tirado must come forth with corroborating evidence, she must reopen the proceedings, inform Valarezo-Tirado of the evidence that requires corroboration, and must give Valarezo-Tirado an opportunity to furnish such information or provide an explanation for its absence.[54]

## C.

Finally, Valarezo-Tirado argues that he was denied his right to counsel and therefore requires a new hearing at which counsel will be present. We cannot agree with that claim.

"[A]lthough the Fifth Amendment does not mandate government-appointed counsel for [noncitizens] at removal proceedings, it indisputably affords [a noncitizen] the right to counsel of his or her own choice at his or her own expense."[55] In removal proceedings, the right to counsel imposes certain obligations on the IJ. She must "[a]dvise the [noncitizen] of his or her right to representation, at no expense to the government, by counsel of his or her own choice . . . and require the [noncitizen] to state then and there whether he or she desires representation."[56] She must also "[a]dvise the [noncitizen] of the availability of pro bono legal services for the immigration court location at which the hearing will take

---

[52] *Chukwu*, 484 F.3d at 192.

[53] *Saravia*, 905 F.3d at 738.

[54] *See id.* (An IJ must provide the petitioner with "notice [of the facts requiring corroboration and] an opportunity to provide corroborating evidence or explain its unavailability.").

[55] *Leslie v. Att'y Gen.*, 611 F.3d 171, 181 (3d Cir. 2010).

[56] *Bonilla*, 891 F.3d at 91–92 (quoting 8 C.F.R. § 1240.10(a)(1)–(2)).

place, and ascertain that the [noncitizen] has received a list of such pro bono legal services providers."[57] If an IJ fails to do so, the noncitizen is entitled to a new hearing without a showing of prejudice.[58]

Valarezo-Tirado argues that because there is a right to counsel in removal proceedings, that same right should be recognized in reviews of credible fear determinations. We have recognized, however, that the credible fear interview process differs from removal proceedings and, concomitantly, so do the protections offered to noncitizens in either process.

In *Bonilla*, we recognized this difference and denied a claim similar to the one Valarezo-Tirado now brings. That case is instructive. There, petitioner Sorto Bonilla was similarly subject to a reinstated removal order but expressed a fear of returning to his home country.[59] He appeared before the asylum officer with counsel but was unsuccessful. He appealed the asylum officer's negative decision to an IJ.[60] However, Sorto Bonilla appeared before the IJ without counsel.[61] The IJ agreed with the asylum officer's negative credible fear determination and ordered Sorto Bonilla removed. Sorto Bonilla then petitioned for review in this Court arguing that he was denied his right to counsel.[62]

We recognized that the regulations governing reviews of credible fear determinations "state that [a noncitizen] 'may be represented by counsel' at the screening process' first step—the interview with the asylum officer"—but found that "the regulations are silent as to whether [a noncitizen] may have counsel present at the second step of the screening process before the IJ."[63] We concluded that Sorto Bonilla had "not shown that the regulations explicitly invested him with a right to counsel at the IJ's review hearing, and we need not reach the question [] whether he otherwise has such a right . . . because

---

[57] *Id.* at 92 (quoting 8 C.F.R. § 1240.10(a)(1)–(2)).
[58] *See Leslie*, 611 F.3d at 180.
[59] 891 F.3d at 89.
[60] *Id.*
[61] *Id.* at 90.
[62] *Id.*
[63] *Id.* (quoting 8 C.F.R. § 208.31(c), (g)).

Sorto Bonilla 'was not denied the opportunity to obtain the counsel of his choice.'"[64] The same result obtains here.

Valarezo-Tirado cannot show that he was denied the opportunity to obtain counsel. Valarezo-Tirado was specifically asked if he wished to stop the proceedings to obtain counsel at his credible fear interview. In fact, as quoted above, the hearing officer gave him that opportunity twice and also offered a list of pro bono and low-cost lawyers whom he could consult if he wished to briefly postpone the hearing.[65] He declined and stated that he wanted to proceed with the interview that day.[66]

His claim regarding the hearing before the IJ fares no better. Valarezo-Tirado "was notified that the IJ may allow him to be represented at the proceeding and instructed that his counsel should be present if he wished to be represented,"[67] but Valarezo-Tirado appeared at the hearing without counsel. At the beginning of the hearing, the IJ asked Valarezo-Tirado if he had received information at his credible fear interview about his ability to have a lawyer for the hearing before the IJ.[68] He affirmed that he had.[69] Also, as in *Bonilla*, "the IJ noted that [Valarezo-Tirado] did not have counsel present, further reflecting that the IJ was cognizant of the value of legal counsel and did not deprive him of it."[70] Valarezo-Tirado neither objected nor asked for a lawyer during the hearing before the IJ. Accordingly, he has not shown that he was denied counsel before the IJ.

## III.

We realize, and "readily acknowledge that an IJ's position is an impossibly demanding and challenging one."[71] We have already commented on this above. Moreover, we

---

[64] *Id.* (quoting *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 376 (3d Cir. 2003)).

[65] **(*See* App. 21–22.)**

[66] **(*Id.*)**

[67] *Bonilla*, 891 F.3d at 92.

[68] **(App. 6–7.)**

[69] **(App. 7.)**

[70] *Bonilla*, 891 F.3d at 92.

[71] *Abulashvili v. Att'y Gen.*, 663 F.3d 197, 208 (3d Cir. 2011).

recognized in 2011 that "IJs [were] confronted with an exponential growth in their caseloads," noting that the average immigration judge handled over 1500 cases in a year.[72] And the volume continues to increase.

A 2019 study found that "on average each [immigration] judge currently has an active pending caseload of over two thousand cases."[73] Nevertheless, we cannot allow incredibly difficult logistics to give license to IJs to skirt their responsibilities. This includes the obligation to inform the petitioner of the reasons for the IJ's decision and provide an adequate explanation of the decision that does not require us to parse through the testimony in search of evidence that supports it. A two-sentence recitation on a bullet-point form will rarely, if ever, provide sufficient reasoning for a decision. A decision, such as the one here, that does not refer to record evidence will never suffice. Because, here, the IJ's decision was not supported by substantial evidence, we will vacate the decision and order and remand to the IJ for proceedings consistent with this opinion.

---

[72] *Id*. at 208 & n.10.

[73] *Crushing Immigration Judge Caseloads and Lengthening Hearing Wait Times*, TRAC Immigration (Oct. 25, 2019), https://trac.syr.edu/immigration/reports/579/.